**PORTER, Price Administrator, v. MURRAY.**
**Civil Action No. 540.**

District Court, D. New Hampshire.
March 27, 1946.

Clinton S. Osgood, of Manchester, N. H., and William D. Tribble, of Boston, Mass., for plaintiff.

Ernest R. D'Amours, of Manchester, N. H., for defendant.

WOODBURY, Circuit Judge.

This is an application under § 202 (e) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 922 (e), for an order requiring compliance with a subpoena duces tecum issued at the instance of the Price Administrator, Office of Price Administration, by the local District Director, Office of Price Administration, pursuant to authority conferred upon him by the Administrator's Revised General Order 53 dated May 13, 1944. 9 F.R. 5191. The defendant opposes the application on the ground that the Emergency Price Control Act confers no authority upon the Administrator to delegate his statutory power to issue subpoenas, and on the further ground that the subpoena in question, if otherwise valid, is so broad and indefinite in its terms that its enforcement would violate the Fourth Amendment of the Constitution of the United States. In my view the first ground is valid. In consequence it is the only one requiring consideration.

Section 202 (c) of the Emergency Price Control Act provides: "For the purpose of obtaining any information under subsection (a),[1] the Administrator may by subpena require any other person to appear and testify or to appear and produce documents, or both, at any designated place." Obviously this subsection does not in terms authorize the Administrator to delegate his power to issue subpoenas. In fact an examination of the entire Act discloses that with the possible exception of the section added by amendment on June 28, 1944, 58 Stat. 601, 50 U.S.C.A.Appendix, § 922a none of the many powers conferred upon the Administrator are expressly made delegable. Thus for the Administrator's authority to delegate any of the powers given to him by the Act, including the subpoena power, recourse must be had to certain of its general provisions.

Those pertinent are found in § 201 (a) and (b). Paragraph (a) of § 201, after providing for the appointment of a Price Administrator and fixing his salary, reads so far as material "The Administrator may, subject to the civil-service laws, appoint such employees as he deems necessary in order to carry out his functions and duties under this Act, and shall fix their compensation * * *. The Administrator may utilize the services of Federal, State, and local agencies and may utilize * * * such voluntary and uncompensated services, as may from time to time be needed." Paragraph (b) following, in material part, provides: "The principal office of the Administrator shall be in the District of Columbia, but he or any duly authorized representative may exercise any or all of his powers in any place."

But these provisions are almost identically the same as the parts of § 4 (b) and (c) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 204 (b, c), which the Supreme Court in Cudahy Packing Co. v. Holland, 315 U.S. 357, 62 S.Ct. 651, 655, 86 L.Ed. 895, held insufficient to confer authority upon the Administrator of the Wage & Hour Division to delegate his statutory power under § 9 of the latter act to sign and issue subpoenas duces tecum. Nevertheless the Administrator contends that the Cudahy Packing Co. case is not controlling here because the legislative history of the Emergency Price Control Act differs radically from the legislative history of the Fair Labor Standards Act. In support of his contention he refers to the report on the Emergency Price Control Act of the Senate Committee on Banking and Currency (No. 931, 77th Congress, 2nd Sess.) which reads in part as follows:

"Section 201 (a) authorizes the Administrator to hire such employees, utilize and to establish such regional, local, or other agencies, and to accept such voluntary and uncompensated services as he deems to be necessary. He may perform his duties through such employees or agencies *by delegating to them any of the powers given to him by the bill.* * * *

---

[1] Subsection (a) reads: "The Administrator is authorized to make such studies and investigations, to conduct such hearings, and to obtain such information as he deems necessary or proper to assist him in prescribing any regulation or order under this Act, or in the administration and enforcement of this Act and regulations, orders, and price schedules thereunder."

402

"Section 201 (b) provides that the principal office of the Administrator shall be in the District of Columbia but authorizes the Administrator, or any representative or other agency *to whom he may delegate any or all of his powers,* to exercise such powers in any place. * * *" (Italics added)

Furthermore, he says that in 1944, in the course of hearings on extension of the Emergency Price Control Act, Congress was informed that the Administrator interpreted its language as authorizing him to delegate his subpoena power, and yet Congress did nothing to amend the Act in this respect when extending it to June 30, 1945, 58 Stat. 632. This history, he says, clothes the words of the Emergency Price Control Act with quite different meaning from the similar words of the Fair Labor Standards Act, which, as the Supreme Court in the Cudahy Packing Co. case (page 366 of 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895) pointed out, were deliberately chosen by the Conference Committee after it had eliminated provisions of both the House and Senate bills expressly authorizing delegation of the subpoena power.

 I concede some force to this argument. But it does not seem to me highly persuasive because it does not appear that the Senate Committee in its report had its collective mind focused on the Administrator's subpoena power in particular rather than upon his other powers in general; because the report of a committee of the Senate does not go very far to show the intention of a majority of both houses of Congress, that is, is less persuasive on the issue of Congressional intent than the report of a conference committee of both houses; and because an extension of emergency legislation for one year does not seem to me to indicate legislative approval of an administrative interpretation thereof as clearly as reenactment of permanent legislation. But however this may be, I think the argument must be rejected because of the ratio decidendi of the Cudahy Packing Co. case.

. To be sure in the above case the Supreme Court relied somewhat upon the legislative history of the Fair Labor Stand-

ards Act mentioned above, but it seems to me that the Court's main reliance was upon the peculiar nature of the subpoena power and the history of legislation with respect to the use of that power by administrative officials. In its opinion in that case, after pointing out in detail that the argument for full powers of delegation drawn from the general statutory provisions quoted earlier in this opinion proves too much in that it would sanction delegation by the Administrator of even his most important powers to the humblest of his subordinates, the Court says "Unlimited authority of an administrative officer to delegate the exercise of the subpoena power is not lightly to be inferred." And this the Court says is for the reason that "It is a power capable of oppressive use, especially when it may be indiscriminately delegated and the subpoena is not returnable before a judicial officer." Then the court goes on to point out the uses to which an administrative subpoena may be put and its "coercive tendency," all of which, it says, "are cogent reasons for inferring an intention of Congress not to give unrestricted authority to delegate the subpoena power which it has in terms granted only to the responsible head of the agency."

Next the court points out a material difference between an administrator's subpoena power and his power to make investigations, in that the latter power is much less burdensome than the former, and following this it says "The entire history of the legislation controlling the use of subpoenas by administrative officers indicates a Congressional purpose not to authorize by implication the delegation of the subpoena power." In support of this statement the Court lists the statutes which fail to grant authority to an administrator to delegate the issuance of subpoenas and those which specifically authorize delegation of that power and "All this" the court says "is persuasive of a Congressional purpose that the subpoena power shall be delegable only when an authority to delegate is expressly granted."

 The foregoing, particularly the scope of the language quoted, seems to me clearly to indicate that whatever the situa-

tion may be with respect to other powers, a matter with which I am not concerned, as a general proposition of law an administrator's authority to delegate his statutory subpoena power is not to be inferred either from the nature of his duties or from general language authorizing the employment of subordinates, but exists only when Congress has seen fit to grant it in terms.

A judgment will be entered dismissing the complaint.